UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CRISTIAN SAUL ARCE-IPANAQUE, Petitioner, | : | 19-CV-1076 (JMF) |
| -v- | : | MEMORANDUM OPINION AND ORDER |
| THOMAS DECKER, in his official capacity as Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement, et al., Respondents. | : | |

JESSE M. FURMAN, United States District Judge:

In this case, the Court is confronted with yet another claim by a noncitizen who has been detained pending removal proceedings that his detention — now exceeding twenty-one months — violates the Due Process Clause of the Fifth Amendment. Petitioner Cristian Saul Arce-Ipanaque, a lawful permanent resident, was taken into custody on July 25, 2017, and detained pursuant to 8 U.S.C. § 1226(c), which mandates the detention of noncitizens who have committed certain kinds of crimes pending their removal proceedings. He now petitions for the writ of habeas corpus, pursuant to 28 U.S.C. § 2241, arguing that he is entitled as a matter of due process to an individualized bail hearing at which the Government bears the burden of proving dangerousness or risk of flight by clear and convincing evidence and the Immigration Judge is required to consider the ability to pay and the suitability of alternative conditions of release. For the reasons that follow, his petition is granted.

This Court has addressed the due process rights of a noncitizen detained pursuant to Section 1226(c) on several occasions. *See Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL

3738947 (S.D.N.Y. Aug. 7, 2018); *Young v. Aviles* ("*Young I*"), 99 F. Supp. 3d 443 (S.D.N.Y. 2015); *Young v. Aviles* ("*Young II*"), No. 15-CV-4545 (JMF), 2015 WL 4579204 (S.D.N.Y. July 29, 2015). Those cases stand for the proposition — not disputed by Respondents here — that, "at some point, detention without a hearing offends the Due Process Clause." *Vallejo*, 2018 WL 3738947, at *3 (internal quotation marks omitted). More specifically, this Court and other courts in this District have "overwhelmingly adopted a fact-based inquiry" in determining if or when detention crosses the line of constitutional concern. *Gomes Herbert v. Decker*, No. 19-CV-760 (JPO), 2019 WL 1434272, at *2 (S.D.N.Y. Apr. 1, 2019) (internal quotation marks omitted); *see Vallejo*, 2018 WL 3738947, at *3; *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *9 (S.D.N.Y. May 23, 2018). Courts generally consider the following five factors: (1) the length of time the noncitizen has already been detained; (2) whether the noncitizen is responsible for the delay; (3) whether the noncitizen has asserted defenses to removal; (4) whether the noncitizen's civil immigration detention exceeds the time the noncitizen spent in prison for the crime that rendered him removable; and (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. *See Gomes Herbert*, 2019 WL 1434272, at *2; *Vallejo*, 2018 WL 3738947, at *3. The Court has also considered "whether the continued duration of the detention is finite or near conclusion" and "the interests served by continued detention." *Vallejo*, 2018 WL 3738947, at *3 (internal quotation marks omitted).

Applying those factors to the facts of this case, familiarity with which is assumed, the Court concludes that Arce-Ipanaque is constitutionally entitled to an individualized bond hearing. First, the "sheer length" of Arce-Ipanaque's detention to date — more than twenty-one months — "is, to put it mildly, significant." *Id.* at *4 (internal quotation marks omitted); *see*

*Young II*, 2015 WL 4579204, at *2 (citing cases in which detentions of eleven months or less were held to be impermissible).[1] Second, Arce-Ipanaque is not responsible for the vast majority of the delay. Even without counting delays for which he is arguably responsible — namely, a one-month adjournment of the initial master calendar hearing requested by his counsel and a six-week adjournment of the post-remand hearing at which he and his counsel did not (and perhaps could not) appear — Arce-Ipanaque has been detained without a bond hearing for more than eighteen months through no fault of his own. That timing is facially "significant," and it cuts in Arce-Ipanaque's favor. *Vallejo*, 2018 WL 3738947, at *4 (finding, even where the petitioner had had an individualized bond hearing, that subsequent detention of almost seventeen months violated his due process rights).

Third, "there is no basis in the record to conclude that [Arce-Ipanaque] acted in bad faith or used delay tactics in extending his detention." *Id.* (internal quotation marks and brackets omitted). To the contrary, he prevailed in his initial appeal before the Board of Immigration Appeals. *See* Docket No. 2-6, at 5-6, 14. Notably, Respondents do not suggest that Arce-Ipanaque's defenses to removal are frivolous or meritless, or have been put forward only to cause delay. *See, e.g.*, *Vallejo*, 2018 WL 3738947, at *4 (noting that the petitioner's withholding application was "plainly colorable" and that the respondents had "not suggest[ed] otherwise"); *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) (noting the respondents' failure to "distinguish between bona fide and frivolous

---

[1] To be sure, Arce-Ipanaque twice withdrew a request for a bond hearing — including once when he would have been entitled to a hearing under Second Circuit precedent (which is no longer good law in light of the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)). But more than fifteen months have passed since the last withdrawn request.

arguments" made by a petitioner in opposition to removal).[2] Even if they did make such a suggestion, the Court would decline to "inquire into the strength of Petitioner's defenses" because "it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining [him] pending a final determination as to whether he is removable." *Gomes Herbert*, 2019 WL 1434272, at *3 (internal quotation marks and brackets omitted). Accordingly, the third "factor weighs in [Arce-Ipanaque's] favor" as well. *Cabral v. Decker*, 331 F. Supp. 3d 255, 262 (S.D.N.Y. 2018).

The fourth and fifth factors — the length of the noncitizen's detention compared with the length of time he spent in prison for the crime that rendered him removable and the penal or non-penal nature of the facility in which he is detained — also favor Arce-Ipanaque. While Arce-Ipanaque has been detained by the immigration authorities for more than twenty-one months, his sentences for the two crimes now underlying Respondents' removal efforts (namely, a 2013 misdemeanor conviction for false impersonation and a 2017 misdemeanor conviction for falsification of business records) were 3 days' imprisonment and 180 days' imprisonment, respectively. *See* Docket No. 2-4, at 4-5, 34, 36. In fact, Arce-Ipanaque represents — and Respondents do not dispute — that he was previously "imprisoned for only eight months in total," including time served for a conviction that has since been vacated. Petr.'s Br. 18. Additionally, Arce-Ipanaque has been continuously detained pending his removal proceedings at

[2] One aspect of the procedural history leading to this petition is particularly concerning. On January 4, 2019, Arce-Ipanaque filed a motion arguing that his 2013 conviction does not constitute a crime involving moral turpitude. On January 10, 2019, the Immigration Judge denied the motion for "the reasons stated in the opposition." Docket No. 2-8. The problem: The Government did not file its opposition until January 11, 2019, *the day after the Immigration Judge's decision*. Docket No. 15 ("Fant Decl."), at ¶ 19. The Immigration Judge declined to revisit the decision, however, meaning that Arce-Ipanaque must await a final decision to raise the issue on appeal. Docket No. 5 ("Petr.'s Br."), at 9; Fant Decl. ¶ 21.

either Orange County Jail or Bergen County Jail, the first of which is the exact facility in which he was previously incarcerated criminally, *id.*; *see generally* Docket No. 16 ("Resps.' Br."), and the second of which is "a penal institution in New Jersey," *Gomes Herbert*, 2019 WL 1434272, at *3 (citing *Hernandez*, 2018 WL 3579108, at *10).

Taken together, the five factors compel the Court to conclude that Arce-Ipanaque is constitutionally entitled to an individualized bond hearing. So too do the other factors the Court has considered in past cases: "whether the continued duration of the detention is finite or near conclusion" and "the interests served by continued detention." *Vallejo*, 2018 WL 3738947, at *3 (internal quotation marks omitted). With respect to the former, a decision on Arce-Ipanaque's removability is at least a month or so away. *See* Docket No. 22. And even after such decision is rendered, "the non-prevailing party may pursue a lengthy appeal," Docket No. 19, at 8-9 (citing *Vallejo*, 2018 WL 3738947, at *5); *see Gomes Herbert*, 2019 WL 1434272, at *3 (taking into account both the time that an Immigration Judge might need to render a decision and the possibility of an appeal). Accordingly, Arce-Ipanaque's detention "will continue for several more months, if not more." *Vallejo*, 2018 WL 3738947, at *5 (internal quotation marks omitted). With respect to the latter consideration, Arce-Ipanaque does not contend that he must be released; instead, he merely seeks an opportunity to show that continued detention is unwarranted by either risk of flight or danger to the community. *See* Docket No. 4, at ¶ 51; *see also Vallejo*, 2018 WL 3738947, at *5-6. At bottom, the "minimal burden" that a bond hearing would place on the Government is far outweighed by Arce-Ipanaque's interest in "ensur[ing] that his continued detention is justified." *Id.* at *5 (quoting *Sajous*, 2018 WL 2357266, at *13).

Thus, the Court holds that Arce-Ipanaque is constitutionally entitled to an individualized bond hearing. Two procedural issues remain. First, Arce-Ipanaque contends that the

Government must be required to "demonstrate dangerousness or risk of flight by a clear and convincing standard." Petr.'s Br. 19 (quoting *Hernandez*, 2018 WL 3579108, at *11). Second, he asserts that the hearing must include a consideration of his "ability to pay bond and suitability for alternative conditions of release, to avoid incarceration based on poverty." *Id.* at 20. The Court need not spill further ink on either issue. Substantially for the reasons given by other judges in this Circuit, the Court agrees with Arce-Ipanaque on both points. *See, e.g.*, *Gomes Herbert*, 2019 WL 1434272, at *4 (citing cases for the proposition that "the overwhelming majority of courts have concluded" that the government must bear the burden of proof by clear and convincing evidence and the immigration judge must consider ability to pay bond and alternative conditions (internal quotation marks omitted)); *Hernandez*, 2018 WL 3579108, at *11-12 (holding that "imposing a clear and convincing standard would be most consistent with due process" and that Board of Immigration Appeals caselaw and the Constitution compel consideration of a noncitizen's ability to pay bond and alternatives to detention); *Vallejo*, 2018 WL 3738947, at *6 (finding "a strong argument . . . that due process requires the Government to show at an initial bond hearing that detention is justified by clear-and-convincing evidence"); *see also Martinez v. Decker*, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *5 (S.D.N.Y. Oct. 17, 2018) (holding, as matter of due process, that the Government bears the burden of showing risk of flight or danger by clear and convincing evidence in a bond hearing for a noncitizen detained under 8 U.S.C. § 1226(a)), *appeal filed*, No. 18-3752 (2d Cir. Dec. 18, 2018); *Abdi v. Nielsen*, 287 F. Supp. 3d 327, 338-39 (W.D.N.Y. 2018) (holding that an Immigration Judge must consider the ability to pay in a bond hearing for a noncitizen detained under 8 U.S.C. § 1225(b)).

For the reasons stated above, Arce-Ipanaque's petition for the writ of habeas corpus is GRANTED. Within seven days of the date of this Memorandum Opinion and Order,

Respondents shall either provide Arce-Ipanaque with an individualized bond hearing consistent with this Memorandum Opinion and Order or release him. The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: May 15, 2019
New York, New York

JESSE M. FURMAN
United States District Judge